Evan J. Smith
Marc L. Ackerman
BRODSKY & SMITH
Two Bala Plaza
Suite 805
Bala Cynwyd, PA 19004
Telephone:     610-667-6200
Facsimile:      610-667-9029
esmith@brodskysmith.com
mackerman@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA SANDOVAL, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Breach of Fiduciary Duties |
| INTRICON CORPORATION, NICHOLAS A. GIORDANO, MARK GORDER, RAYMOND HUGGENBERGER, SCOTT LONGVAL, KETHLEEN PEPSKI, HEATHER RIDER, and PHILLIP L. SMITH, | (2)  Aiding and Abetting Breach of Fiduciary Duties<br>(3)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(4)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Lisa Sandoval ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against IntriCon Corporation ("IntriCon" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for breaches of fiduciary duty and for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Altaris Holding

Company LLC, an affiliate of Altaris Capital Partners, LLC, through merger vehicle IC Merger Sub Inc. ("Merger Sub" and collectively with Parent, "Altaris") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 27, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of IntriCon's common stock will be converted into the right to receive $24.25 in cash. As a result of the consummation of the Proposed Transaction, IntriCon will become a wholly owned subsidiary of Altaris.

3.      Thereafter, on April 12, 2022, IntriCon filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to the Proposed Transaction without first taking steps to ensure that Plaintiff in her capacity as a public Company stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or IntriCon

without regard for Plaintiff in her capacity as a public Company stockholder. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff in her capacity as a public Company stockholder.

6.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.

7.      In violation of the Exchange Act and in further breach of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on April 12, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for IntriCon, provided by IntriCon management to the Board and the Board's financial advisors Piper Sandler & Co. ("Piper Sandler"); and, (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Piper Sandler, if any, and provide to the Company and the Board

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages suffered by Plaintiff resulting from the breaches of fiduciary duties and violations of the federal securities laws by Defendants.

**PARTIES**

9. Plaintiff is a citizen of California and, at all times relevant hereto, has been a IntriCon stockholder.

10. Defendant IntriCon Corporation, together with its subsidiaries, designs, develops, engineers, manufactures, and distributes body-worn devices in the United States, Europe, Asia, and internationally. IntriCon is incorporated in Pennsylvania and has its principal place of business at 1260 Red Fox Road, Arden Hills, MN 55112.  Shares of IntriCon common stock are traded on the Nasdaq under the symbol "IIN".

11. Defendant Nicholas A. Giordano ("Giordano") has been a Director of the Company at all relevant times.

12. Defendant Mark Gorder ("Gorder") has been a director of the Company at all relevant times.

13. Defendant Raymond Huggenberger ("Huggenberger") has been a director of the Company at all relevant times.

14. Defendant Scott Longval ("Longval") has been a director of the Company at all relevant times.  Longval also serves as the Company's Chief Executive Officer ("CEO").

15. Defendant Kathleen Pepski ("Pepski") has been a director of the Company at all relevant times.

16. Defendant Heather Rider ("Rider") has been a director of the Company at all relevant times.

17. Defendant Philip L. Smith ("Smith") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."  In addition, Smith serves as the Chairman of the Board of Directors.

19. Non-Party Altaris is a privately held investment fund.

20. Non-Party Merger Sub is a wholly owned subsidiary of Altaris created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company is organized under the laws of the Commonwealth of Pennsylvania.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

24.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with IntriCon and owe the public stockholders of the Company, including Plaintiff, the duties of due care, loyalty, and good faith.

25.     By virtue of their positions as directors and/or officers of IntriCon, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause IntriCon to engage in the practices complained of herein.

26.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company public stockholders including Plaintiff.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the Company and its public stockholders, including Plaintiff;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

27.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of IntriCon, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders including Plaintiff; and/or

      c.     unjustly enriching themselves at the expense or to the detriment of

the Company or its stockholders including Plaintiff.

28.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff as a public stockholder of IntriCon, including their duties of loyalty, good faith, and due care.

29.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for her IntriCon common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

30.     IntriCon Corporation, together with its subsidiaries, designs, develops, engineers, manufactures, and distributes body-worn devices in the United States, Europe, Asia, and internationally. It offers micro-miniature products, microelectronics, micro-mechanical assemblies, high-precision injection-molded plastic components, and assemblies and software solutions for medical devices, hearing healthcare, and professional audio communication devices markets. The company also provides micro coils for surgical navigation clinical applications, such as interventional pulmonology and electrophysiology; joint engineering and manufacturing services for complex medical devices, including catheters covering a range of applications for cardiology, peripheral vascular, neurology, radiology, and pulmonology; bubble sensors and flow restrictors that monitor and control the flow of fluid in an intravenous infusion system; and safety needle products for original equipment manufacturing customers. In addition, it offers professional audio headset products used for emergency response needs in the fire, law enforcement, safety, aviation, and military markets; and a line of miniature ear- and head-worn devices used by performers and support staff in the music and stage performance markets. The company sells its hearing device products, and medical and professional audio communications products directly to hearing instrument manufacturers, distributors, and partnerships; and microphone products to the

radio communication and professional audio industries, as well as markets and sells hearing aid devices directly to consumers through direct mail advertising, Internet, and call center. The company was formerly known as Selas Corporation of America and changed its name to IntriCon Corporation. The company was incorporated in 1930 and is headquartered in Arden Hills, Minnesota.

31.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the November 8, 2021 press release announcing its 2022 Q3 financial results, the Company reported Revenue of $31.1 million, a 13.5% increase compared to the prior year period, and Cash and investment securities of $33.1 million.

32.    Speaking on the positive results, CEO Defendant Longvall said, "Strong customer demand persisted in each of our core markets throughout the third quarter, leading to another period of year-over-year and sequential revenue growth. Our business continued to see increased order flow in our diabetes business, expansion in our hearing health pilot programs with a ramp up in activity ahead of the final OTC regulation, along with sustained growth in our interventional catheter business," ….. "While on-going impact from pandemic-related supply chain and labor shortages resulted in margin pressure, we view this as transitory and are actively implementing measures that we believe will mitigate these constraints to meet the demand of our customers."

33.    The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by IntriCon.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

34.    Despite this upward trajectory, the Individual Defendants have caused IntriCon to enter into the Proposed Transaction without providing requisite information to IntriCon stockholders such as Plaintiff.

*The Flawed Sales Process*

35.    As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

36.    Notably, the Preliminary Proxy Statement indicates that the Company failed to take any active measures to ensure a robust sales process until after it had already executed the merger agreement, including entering into exclusivity with Altaris despite not having performed any market check whatsoever for potentially interested third parties.

37.    Moreover, while the Preliminary Proxy Statement indicates that a special committee composed of independent Directors was created, it was a mere lip service to a process truly run by an independent hand, with such special committee being formed only after the merger agreement had been entered into and limited in scope to addressing any proposals received during the brief "go-shop" period post entry into the Merger Agreement – a period which would be constrained by the termination fee and matching rights that the Company was at that point bound to.

38.    The Preliminary Proxy Statement also reveals that several Company Insiders will be given disparate treatment, being allowed to roll over all or portions of their existing Company stock into stock in the surviving entity – benefits not available to Plaintiff or other public stockholders of the Company.

39.    Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Altaris, whether this agreement differed from any other agreement with potentially interested third parties during the sales process

not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

40.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

41.     On February 28, 2022, IntriCon and Altaris issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **ARDEN HILLS, Minn., Feb. 28, 2022 (GLOBE NEWSWIRE)** -- Intricon Corporation (NASDAQ: Altaris), an international joint development manufacturer engaged in designing, developing, engineering, manufacturing, and packaging miniature interventional, implantable and body-worn medical devices, today announced that it has entered into a definitive agreement whereby an affiliate of Altaris Capital Partners, LLC (collectively with its affiliates, "Altaris"), an investment firm focused exclusively on the healthcare industry, will acquire the company. Under the terms of the agreement, Altaris will acquire all outstanding shares of Intricon for $24.25 per share in a transaction that values Intricon at an equity value of approximately $241 million. The purchase price represents a meaningful premium of approximately 39% to Intricon's closing stock price on February 25, 2022.
>
> "We are excited to enter into this transaction with Altaris, which will deliver a compelling valuation to our shareholders and enable us to accelerate the advancement of our joint development manufacturing capabilities in micromedical technology across a broad range of high growth markets," said Scott Longval, President and Chief Executive Officer. "Our team has done an outstanding job of establishing Intricon as the partner of choice for companies that are bringing truly advanced technology to medical devices. As we enter the next chapter for our company, we believe that Altaris is the ideal partner to help us further advance our mission."
>
> **Transaction Details**
>
> Under the terms of the agreement, Intricon shareholders will receive $24.25 in cash for each share of Intricon common stock they own. The transaction has fully committed financing from funds affiliated with Altaris.

Intricon's Board of Directors has unanimously approved the merger agreement with Altaris and recommends that Intricon shareholders approve the proposed merger and merger agreement. Intricon expects to hold a Special Meeting of Shareholders to consider and vote on the proposed merger and the merger agreement as soon as practicable after the mailing of the proxy statement to its shareholders. The transaction is expected to close in the second quarter of 2022, subject to customary closing conditions, including approval by Intricon shareholders and receipt of regulatory approvals. Upon completion of the transaction, Intricon will become a private company and Intricon shares will no longer be listed on any public market.

Under the terms of the merger agreement, Intricon may solicit superior proposals from third parties for a period of 35 days continuing through April 3, 2022, and in certain cases for a period of 45 days continuing through April 13, 2022. In accordance with the merger agreement, Intricon's Board of Directors, with the assistance of its advisors, intends to solicit superior proposals during this period. In addition, Intricon may, at any time, subject to the provisions of the merger agreement, respond to unsolicited proposals that are reasonably likely to result in a superior proposal. Intricon will have the right to terminate the merger agreement with Altaris to enter into a superior proposal subject to the terms and conditions of such agreement. There can be no assurance that the solicitation process will result in a superior proposal or that any other transaction will be approved or completed. Intricon does not intend to disclose developments with respect to this solicitation process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

### *The Inadequate Merger Consideration*

42.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

43.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company. For example, the Company has traded as high as $26.66 per share within the past 52 weeks, a value that is approximately 10% greater than the consideration offered in the Proposed Transaction.

44.     Additionally, the Company was valued as high $32.00 per share by financial analysts at B. Riley within the year prior to the entry into the Proposed Transaction, a value that is approximately 32% greater than the consideration offered in the Proposed Transaction.

45.     Moreover, post-closure, Plaintiff will be frozen out of her ownership interest in the Company and will not be able to reap the rewards of the Company's future prospects.

46.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Altaris at the expense of Plaintiff and IntriCon stockholders.

***Preclusive Deal Mechanisms***

47.     The Merger Agreement contains certain provisions that unduly benefit ALTARIS by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that constrains IntriCon's ability to enter into alternative strategic transactions.   Notably, in the event of termination, the merger agreement requires IntriCon to pay up to approximately $4 million to ALTARIS, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, IntriCon must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.   The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

48.     The Merger Agreement also contains a "No Solicitation" provision that, after a brief period of time post-entry into the Merger Agreement, restricts IntriCon from considering alternative acquisition proposals by, *inter alia*, constraining IntriCon's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide acquisition

proposal if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

49.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.   Here, the Individual Defendants agreed to provide Altaris information in order to match any other offer, thus providing Altaris access to the unsolicited bidder's financial information and giving Altaris the ability to top the superior offer.   Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Altaris.

50.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests Plaintiff in her capacity as a public Company stockholder.

51.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

52.     The breakdown of the benefits of the deal indicate that Altaris and IntriCon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of IntriCon.

53.     First and foremost, the Preliminary Proxy Statement also reveals that several Company Insiders will be given disparate treatment, being allowed to roll over all or portions of their existing Company stock into stock in the surviving entity – benefits not available to Plaintiff or other public stockholders of the Company.   These rollover amounts will be paid out these insiders as follows:

| Name/Title of Rollover Shareholder | Number of Rollover Shares | Value of Rollover Shares Based on Per-Share Merger Consideration | Number of Class A Units to be Issued for Rollover Shares | Value of Class A Units to be Issued for the Rollover Shares |
|---|---|---|---|---|
| Scott Longval, President, Chief Executive Officer and a Director | 20,619 | $500,011 | 500,011 | $500,011 |
| Mark Gorder, Director | 82,474 | $1,999,995 | 1,999,995 | $1,999,995 |
| **Total** | 103,093 | $2,500,006 | 2,500,006 | $2,500,006 |

54.     Additionally, Company insiders, currently own large, illiquid portions of Company stock and equity awards all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Shares (#)[1] | Shares ($) | Options (#)[2] | Options ($) | RSUs (#)[3] | RSUs ($) | PRSUs (#)[4] | PRSUs ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| Scott Longval | 64,172 | 1,556,171 | 48,000 | 823,200 | 52,664 | 1,277,102 | 22,391 | 542,982 | 4,199,455 |
| Michael Geraci | 35,767 | 867,350 | 34,000 | 613,880 | 9,139 | 221,621 | 4,021 | 97,509 | 1,800,360 |
| Dennis Gonsior | 55,204 | 1,338,697 | 48,000 | 823,200 | 13,970 | 338,773 | 6,885 | 166,961 | 2,667,631 |
| Annalee Lutgen | 2,653 | 64,335 | 2,267 | 38,924 | 4,778 | 115,867 | 2,271 | 55,072 | 274,198 |
| cholas A. Giordano | 113,092 | 2,742,481 | — | — | 1,833 | 44,450 | — | — | 2,786,931 |
| Mark S. Gorder | 350,658 | 8,503,456 | 113,250 | 2,058,900 | 23,051 | 558,987 | — | — | 11,121,343 |
| ymond O. Huggenberger | 9,321 | 226,034 | — | — | 1,833 | 44,450 | — | — | 270,484 |
| Kathleen P. Pepski | 3,397 | 82,377 | — | — | 189 | 4,583 | — | — | 86,960 |
| Heather D. Rider | 7,096 | 172,078 | — | — | 2,025 | 49,106 | — | — | 221,184 |
| Philip I. Smith | 14,161 | 343,404 | 10,000 | 164,332 | 2,166 | 52,526 | — | — | 560,262 |
| Ellen Scipta | 15,386 | 373,111 | — | — | — | — | 1,326 | 32,156 | 405,267 |

55.     Moreover, certain employment agreements with certain IntriCon executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or

officer entitled to them millions of dollars, compensation not shared by Plaintiff, and will be paid out as follows:

### Golden Parachute Compensation

| Name | Cash ($)[(1)(2)] | Equity ($)[(1)(3)] | Perquisites/ Benefits ($)[(1)(4)] | Total ($) |
|---|---|---|---|---|
| Scott Longval President and Chief Executive Officer | 1,000,000 | 2,643,284 | $20,956 | 3,664,240 |
| Michael P. Geraci Senior Vice President, Sales and Marketing | 281,000 | 933,010 | 9,613 | 1,223,623 |
| Dennis L. Gonsior Senior Vice President, Global Operations | 272,000 | 1,328,934 | 10,408 | 1,611,342 |
| Annalee Lutgen Interim Chief Financial Officer | 210,000 | 209,863 | 34,975 | 454,838 |
| Ellen Scipta Former Chief Financial Officer | — | 32,156 | — | 32,156 |

56.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57.     Thus, while the Proposed Transaction is not in the best interests of IntriCon, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

58.     On April 12, 2022, the Intricon Board caused to be filed with the SEC a materially

misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act and in breach of their fiduciary duties, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

59.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Adequate and specific reasoning as to why no market check was performed prior to the entering into an exclusivity agreement with Altaris;

b.   Adequate and specific reasoning as to why the committee of independent and disinterested Board members was not created and given effect to oversee the sales process until the go-shop period;

c.   Whether the confidentiality agreements entered into by the Company with Altaris differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Altaris, would fall away; and

e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning IntriCon's Financial Projections*

60.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for IntriCon provided by IntriCon management to the Board and Piper Sandler and relied upon by Piper Sandler in their analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

61.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, Piper Sandler, "reviewed and analyzed certain information, including financial forecasts, relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company that were furnished to Piper Sandler by the Company."

62.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that IntriCon management provided to the Board and Piper Sandler. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates

or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

63.     With regard to the Management Projections prepared by IntriCon Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, tax, depreciation and amortization, and the specific adjustments made for stock-based compensation, change in fair value of contingent consideration, acquisition related expenses, impairment loss, one-time restructuring expenses, executive transition expenses, system assessment fees, certain one-time legal expenses and other non-operating gains and losses such as the relief funds received from Singaporean government in relation to the ongoing pandemic; and

b.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: post tax operating income, depreciation and amortization, (increase)/decrease in working capital, and capital expenses.

64.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

65.     This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

66.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Piper Sandler's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties and violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper Sandler*

67.     In the Preliminary Proxy Statement, Piper Sandler describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

68.     With respect to the *Selected Publicly Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific metrics for each selected company;

    b.   The specific 2021 EV/EBITDA multiple reference range as applied to the Company and the specific inputs and assumptions used to determine said multiple reference range; and

    c.   The specific 2022 EV/EBITDA multiple reference range as applied to the Company and the specific inputs and assumptions used to determine said multiple reference range.

69.     With respect to the *Selected M&A Transactions Analysis - Medical Manufacturing Companies—Business Profile*, the Preliminary Proxy Statement fails to disclose the following:

     a.   The specific metrics for each selected transaction analyzed;

     b.   The date on which each selected transaction closed;

     c.   The value of each selected transaction analyzed; and

     d.   The specific EV LTM/EBITDA multiple reference range as applied to the Company and the specific inputs and assumptions used to determine said multiple reference range; and

     e.   The specific EV FTM/EBITDA multiple reference range as applied to the Company and the specific inputs and assumptions used to determine said multiple reference range.

70.    With respect to the *Selected M&A Transactions Analysis - Medical Manufacturing Companies—Financial Profile*, the Preliminary Proxy Statement fails to disclose the following:

     a.   The specific metrics for each selected transaction analyzed;

     b.   The date on which each selected transaction closed;

     c.   The value of each selected transaction analyzed; and

     d.   The specific EV LTM/EBITDA multiple reference range as applied to the Company and the specific inputs and assumptions used to determine said multiple reference range; and

     e.   The specific EV FTM/EBITDA multiple reference range as applied to the Company and the specific inputs and assumptions used to determine said multiple reference range

71.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

     a.   The terminal value for the Company calculated;

    b.   The specific inputs and assumptions used to determine the utilized terminal multiple range 11.0x to 13.0x estimated calendar year 2026 EBITDA;

    c.   The range of net present values for unlevered free cash flows for the Company calculated;

    d.   The specific inputs and assumptions used to determine the utilized discount rate range of 12.1% to 14.1%;

    e.   IntriCon's weighted average cost of capital utilized; and

    f.   The Company's net debt as of March 31, 2022 utilized.

72.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

73.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public IntriCon stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

**FIRST COUNT**

**Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

74.    Plaintiff repeats all previous allegations as if set forth in full herein.

75.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in her capacity as a Company public stockholder.

76.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of her investment in IntriCon.

77.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in her capacity as a Company public stockholder by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of the Company to Plaintiff in her capacity as a Company public stockholder.

78.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in her capacity as a Company public stockholder all material information necessary for it to make an informed decision on whether to vote her shares in favor of the Proposed Transaction.

79.     The Individual Defendants dominate and control the business and corporate affairs of IntriCon, and are in possession of private corporate information concerning IntriCon's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in her capacity as a Company public stockholder which makes it inherently unfair for them to benefit their own interests to the exclusion of Plaintiff.

80.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff in her capacity as a Company public stockholder.

81.     As a result of the actions of the Individual Defendants, Plaintiff in her capacity as a Company public stockholder will suffer irreparable injury in that she has not and will not receive

its fair portion of the value of IntriCon's assets and has been and will be prevented from obtaining a fair price for her holdings of IntriCon common stock.

82.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff in her capacity as a Company public stockholder, all to the irreparable harm of the Plaintiff.

83.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

### SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### <u>(Against Defendant IntriCon)</u>

84.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

85.     Defendants IntriCon, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

86.     As a result this conduct, Plaintiff in her capacity as a Company public stockholder will suffer irreparable injury in that she has not and will not receive her fair portion of the value of IntriCon's assets and has been and will be prevented from obtaining a fair price for its holdings of IntriCon common stock.

87.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

88.     Plaintiff repeats all previous allegations as if set forth in full herein.

89.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

90.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

91.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

92.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have

known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

93.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

94.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

95.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

96.     Plaintiff repeats all previous allegations as if set forth in full herein.

97.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

98.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

99.   The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of IntriCon's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

100.   The Individual Defendants acted as controlling persons of IntriCon within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause IntriCon to engage in the wrongful conduct complained of herein. The Individual Defendants controlled IntriCon and all of its employees. As alleged above, IntriCon is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.   Enjoining the Proposed Transaction;

B.   In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring and decreeing that the Merger Agreement was agreed to in breach of the

fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.       Directing the Individual Defendants to comply with the Exchange Act and their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.       Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.       Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 19, 2022                    **BRODSKY & SMITH, LLC**

                            By: _____
                                 Evan J. Smith
                                 Marc L. Ackerman
                                 Two Bala Plaza
                                 Suite 805
                                 Bala Cynwyd, PA 19004

                                 *Counsel for Plaintiff*

JS 44  (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lisa Sandoval | Intricon Corporation, et. al. |

| (b)  County of Residence of First Listed Plaintiff   **Los Angeles Cty., CA** | County of Residence of First Listed Defendant   **Ramsey Cty., MN** |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Marc L. Ackerman, Brodsky & Smith, LLC, 2 Bala Plaza, Ste 805, Bala Cynwyd, PA 19004, 610-667-6200 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☒ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   **PERSONAL INJURY** | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane ☐ 365 Personal Injury - | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Product Liability      Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & ☐ 367 Health Care/ | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander      Pharmaceutical | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Personal Injury | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability      Product Liability | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product      Injury Product | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability      Liability | | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   **PERSONAL PROPERTY** | **LABOR** | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | Protection Act |
| ☐ 190 Other Contract | Product Liability ☐ 371 Truth in Lending | Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury      Property Damage | Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury - ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice      Product Liability | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment ☐ 510 Motions to Vacate | Income Security Act | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment   **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
      Proceeding

☐ 2 Removed from
      State Court

☐ 3 Remanded from
      Appellate Court

☐ 4 Reinstated or
      Reopened

☐ 5 Transferred from
      Another District
      *(specify)*

☐ 6 Multidistrict
      Litigation -
      Transfer

☐ 8 Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 27 of the Exchange Act (15 U.S.C. § 78aa)

Brief description of cause:
Violations of the Exchange Act

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | | DOCKET NUMBER | |
|---|---|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Apr 19, 2022 | |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

JS 44 Reverse (Rev. 10/20)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____4616 Harriman Ave,  Los Angeles 90032_____

Address of Defendant: _____1260 Red Fox Road, Arden Hills, MN 55112_____

Place of Accident, Incident or Transaction: _____1260 Red Fox Road, Arden Hills, MN 55112_____

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/19/2022 _____    *Attorney-at-Law / Pro Se Plaintiff* _____    56294 _____
                                                                                                   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☑ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____Marc L. Ackerman_____, counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 04/19/2022 _____    *Attorney-at-Law / Pro Se Plaintiff* _____    56294 _____
                                                                                                   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| LISA SANDOVAL | : | CIVIL ACTION |
| v. | : | |
| INTRICON CORPORATION, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                  (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ( )

| | | |
|---|---|---|
| April 19, 2022 | Marc L. Ackerman | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-667-6200 | 610-667-9029 | mackerman@brodskysmith.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.